IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 12, 2006

## STATE OF TENNESSEE v. JOHN F. WALLACE

**Appeal from the Criminal Court for Shelby County**
**No. 04-01333   Carolyn Wade Blackett, Judge**

―――――――――

**No. W2005-02477-CCA-R3-CD  - Filed October 31, 2006**

―――――――――

The appellant, John Wallace, was convicted of four counts of assault.  As a result, the trial court sentenced him to four, concurrent sentences of eleven months and twenty-nine days.  The trial court then placed the appellant on probation for the length of the sentence and imposed a fine of $500 for each conviction.  On appeal, the appellant challenges the sufficiency of the evidence and the trial court's imposition of the $500 fine for each conviction.  Because the evidence is sufficient to support the convictions, we affirm the judgment of the trial court in that regard.  However, because the trial court improperly fined the appellant $500 for each conviction when the jury was not instructed to impose a fine and the appellant did not waive his right to a jury-imposed fine, we  remand the matter to the trial court for the proper assessment of a fine.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed in Part; Reversed in Part and Remanded.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Robert C. Brooks, Memphis, Tennessee, for the appellant, John F. Wallace.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General, and Tiffani Taylor, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On September 19, 2003, Memphis Police were dispatched to the Shelby Drive location of Memphis Light, Gas and Water ("MLGW") after 911 operators received a call that there was an "armed party" on the premises.

According to Elizabeth Jackson, on September 19, 2003, she drove her 1998 Dodge Stratus to the MLGW payment center in Memphis on Shelby Drive. Ms. Jackson had three passengers in the car that day, her daughter Gail Herron, her granddaughter Latrina Hardaway and her granddaughter-in-law Zarisiahe Lewis. When they arrived at MLGW, Ms. Lewis went inside to pull a number for the customer service line. The three other women sat in the car with the windows rolled down, enjoying the warm weather.

Ms. Jackson stated that at the time, the office was very crowded and the parking lot was very full, so when Ms. Lewis returned to the car, the women decided to go to lunch and come back later that afternoon. As Ms. Jackson was attempting to drive out of the parking lot, her car was blocked by the appellant in his large pick-up truck. Ms. Jackson testified that she told the appellant she was leaving the parking lot and not trying to park. Another car pulled out of a nearby parking space at that time and the appellant began to back his truck into that spot. Ms. Jackson stated that she saw the appellant pull out a gun and place it on the ledge of his window as he was "curving his wheel to go into the parking area." When the appellant pulled out the gun, Ms. Jackson heard him say "pow, pow." The gun was pointed at the women in Ms. Jackson's car. Ms. Jackson also heard the appellant saying other things, but she could not remember his exact words. Ms. Jackson became extremely frightened at the sight of the gun and immediately drove across the street to the Walgreen's parking lot while her daughter called 911. The women waited for the police to arrive.

Gail Herron also saw the appellant's large truck blocking her mother's car as they were trying to leave the MLGW parking lot. Ms. Herron remembered that the appellant was cursing "pretty bad," even calling Ms. Jackson a "goddamn bitch." According to Ms. Herron, the appellant claimed that he was "trying to get this goddamn parking space" when Ms. Jackson told the appellant that she was not trying to park. Ms. Herron also saw the appellant point the gun out the window of his truck toward the women in the car. Ms. Herron described that she was "scared [the appellant] was going to shoot it, you know, fire it" and began screaming. After telling her mother to "step on it," Ms. Herron got on a cell phone and dialed 911.

Zarisiahe Lewis also witnessed the appellant's truck blocking the car as the four women attempted to leave the MLGW parking lot that day. Ms. Lewis heard the appellant using "bad profanity" toward them, even though none of the women in the car said anything rude or "ugly" to the appellant. Ms. Lewis saw the appellant reach down and grab a gun from somewhere in his truck before he placed it on the ledge of his window pointed toward Ms. Jackson's car. Ms. Lewis was frightened because the appellant "could have shot [them]."

The fourth passenger in the car, Latrina Hardaway, relayed a substantially similar version of the events. Ms. Hardaway described the appellant as losing his "cool" about a parking space at the MLGW parking lot and stated that the appellant yelled "all types of things" before pulling out a gun, pointing it at the women and stating "pow, pow." Ms. Hardaway was also frightened by the traumatic incident.

Officer Louis Brown of the Memphis Police Department responded to the "armed party" call at the MLGW office on September 19, 2003. Based on the description from the caller, Officer Brown located the appellant in a large pick-up truck that was backed into a parking space in front of the payment office. The victims returned to the scene once the police arrived and were able to identify the appellant as the man who pointed the gun at them. According to Officer Brown, all four victims were frightened. The appellant was described as "belligerent" and "very angry" when he was removed from the truck, handcuffed and placed in the back of a patrol car. Officer Ted Williams, also of the Memphis Police Department, described the appellant as irate, "upset and frustrated." Officer Brown searched the appellant's truck and recovered a .45 caliber handgun in a console compartment between the front seats. The gun was loaded, but was inside a zippered bag.

As a result of the incident, the Shelby County Grand Jury indicted the appellant on four counts of aggravated assault. At trial, William Nunley testified on behalf of the appellant. Mr. Nunley and the appellant had been friends and co-workers for many years. On the date of the incident, Mr. Nunley asked the appellant to take him to MLGW so that he could pay his bill. When they arrived, the drive-through window was closed and there were no available parking spaces, so Mr. Nunley got out of the appellant's truck and walked into the building to pay his bill. The appellant told him that he would wait in the parking lot. When Mr. Nunley exited the building, he saw the appellant sitting in the back of a police car. Mr. Nunley stated that the appellant was calm when he saw him in the back of the police car.

The appellant also took the stand. He testified that he took Mr. Nunley to the MLGW payment office in his Ford F350 dually truck so that Mr. Nunley could pay his bill. The appellant stated that the parking lot was crowded, so he intended to circle the building until he found a parking spot. The appellant testified that he saw a lady leaving a parking space, so he positioned his truck so that he could get her spot after she pulled out. The appellant stated that he saw the Dodge Stratus with the four women in it and thought that they were trying to get the parking space that he was waiting for, so he blocked the Stratus because he "intended for nobody to take [his] spot." The appellant stated that when the car left the parking spot, he backed his truck into the open parking space and motioned to Ms. Jackson in the Stratus that she could pass. At that point, the appellant claimed that he reached into the back seat of his vehicle to get his medicine bag so that he could "check [his] sugar." The appellant stated that he was not angry at the women in the car and did not curse at them or threaten them with a gun. The appellant admitted that he always kept his gun with him in his car, but testified that he had a concealed carry permit for the weapon. The appellant denied pulling out the gun during the confrontation with the victims.

At the conclusion of the proof, the jury found the appellant guilty of four counts of assault, a lesser-included offense. The jury did not recommend a fine. At a subsequent sentencing hearing, the trial court sentenced the appellant to eleven months and twenty-nine days for each conviction, but ordered the sentences to run concurrently. The trial court also ordered the appellant to serve the sentences on probation. Lastly, the trial court imposed a $500 fine on each of the four counts of assault.

The appellant filed a motion for new trial in which he challenged, among other things, the sufficiency of the evidence and the fines as imposed by the trial court. After the denial of the motion, the appellant filed a timely notice of appeal. On appeal, the appellant challenges the sufficiency of the evidence and argues that the trial court was without authority to fine the appellant $500 for each conviction.

Analysis

The appellant contends on appeal that the evidence was not sufficient for a rational jury to find him guilty of four counts of assault. Specifically, the appellant argues that because the jury rejected the State's theory that he committed aggravated assault by displaying a weapon, the evidence was not sufficient to prove that the appellant "intentionally or knowingly caused the alleged victims to 'reasonably fear imminent bodily injury'" as required by statute. The State disagrees.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. Further, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

A person commits assault who "intentionally or knowingly causes another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(a)(2).

Viewing the evidence in the light most favorable to the State, the testimony at trial indicated that all four victims testified that the appellant blocked their car as they tried to leave the MLGW parking lot. All four of the victims testified that the appellant was yelling and cursing at them. Additionally, all four of the victims claimed that the appellant pointed a gun at them from the window of his large truck. The women all claimed that they were frightened by the ordeal and were afraid that they were going to get shot or hurt by the appellant. As soon as the appellant moved his

truck, the women fled in their car to the Walgreen's parking lot across the street and immediately called 911. The appellant himself later testified that he blocked in the car because he "intended for nobody to take my spot." The testimony from the officers that were dispatched to the scene indicated that the appellant was belligerent and irate when they arrived.

Once armed with the evidence, the jury was entrusted exclusively as the triers of fact to evaluate the weight and credibility of the witnesses' testimony. Odom, 928 S.W.2d at 23. Here, they gave the greater weight to the State's witnesses. We will not usurp that role. Moreover, the evidence was sufficient to support the convictions for assault. This Court has noted that the fear as contemplated by the assault statute is "the fear or reasonable apprehension of being harmed" rather than the fear of the actual perpetrator. State v. Gregory Whitfield, No. 02C01-9706-CR-00226, 1998 WL 227776, at *2 (Tenn. Crim. App., at Jackson, May 8, 1998), perm. app. denied, (Tenn. Dec. 7, 1998). While the jury must not have accredited all of the victims' testimony, they certainly believed that the victims feared some harm from the actions of the appellant as evidenced by their finding that the appellant committed assault. This issue is without merit.

## Improper Fine

Lastly, the appellant argues that the trial court improperly imposed a $500 fine on each conviction for assault. Specifically, the appellant claims that the trial court was without authority to impose a fine because the "jury did not assess any fine at the time of its verdict." The State agrees.

Article VI, § 14 of the Tennessee Constitution provides:

> No fine shall be laid on any citizen of this State that shall exceed fifty dollars, unless it shall be assessed by a jury of his peers, who shall assess the fine at the time they find the fact, if they think the fine should be more than fifty dollars.

Tennessee Code Annotated section 40-35-301(b) prescribes the method by which a fine in excess of $50 should be fixed. A trial judge may not set a fine of more than $50 unless: (1) the defendant waives his right for a jury determination of the fine, or (2) the fine is statutorily specified and allows no judicial discretion in its imposition. State v. Martin, 940 S.W.2d 567, 570 (Tenn. 1997).

We have reviewed the record in the case herein, including the technical record, the transcript of the evidence, arguments by counsel, the jury charge, and the trial court's minutes and orders. The jury charge only asked the jury to determine guilt or innocence and made no mention of a fine. The verdict of the jury was announced in open court, apparently without the use of a written verdict form. The verdict as announced by the trial court only made a finding of guilt without mention of a fine. The only document appearing in the record that is similar to a verdict form is a photocopy of a piece of notebook paper attached to the back of the jury charge on which the following is handwritten: "We the jury find the defendant, . . . NOT GUILTY on all four counts of reckless endangerment as included." The record does not contain a waiver signed by the appellant. Therefore, nothing in the

record indicates there was a waiver by the appellant of his right to have the fine fixed by the jury. Therefore, the trial judge lacked the authority to set a fine over $50. Thus, we remand this cause for the proper assessment of the fine. If the appellant does not properly waive the right of a jury to assess the fine, a new jury must be empaneled to fix the amount of the fine. See id. (holding the remedy for violation of the right for jury assessment of a fine is a remand for the empaneling of a new jury to fix the amount of the fine).

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part and remanded. On remand, as set forth above, if the appellant does not waive his right to have a jury set the fine, a jury must be empaneled to fix the amount of the fine.

_____
JERRY L. SMITH, JUDGE